DocuSign Envelope ID: BFFD510E-2E59-49D7-951D-50D713C8B7EF



**This Line of Credit and Accounts Receivable Management Agreement** ("Agreement") is made effective as of the date set forth below (the "Effective Date"), and is made and entered into by and between Fresh Start Funding LLC, an Arizona limited liability company ("FSF"), and both:

**William Ridings**

and

**Ridings Law Firm LLC**

(collectively, the "Firm"). FSF and the Firm are individually, a "party," and collectively, the "parties."

<u>Recitals</u>

**WHEREAS**, FSF offers a suite of related services designed to facilitate consumer bankruptcy law firms offering payment terms to their chapter 7 clients, among which services are financing, accounts receivable management, payment processing, accounting, credit reporting, education and training (the "FSF Program");

**WHEREAS**, the Firm owns and operates a consumer bankruptcy law practice that provides chapter 7 legal services (the "Services") to the Firm's clients (each, a "Client"), each of which enters into a post-petition fee agreement (a "Contract") with the Firm to pay a fixed fee for post-petition chapter 7 services;

**WHEREAS**, the Firm wishes to enroll in the Program and, in connection therewith, to obtain financing from FSF;

**WHEREAS**, as part of the FSF Program, FSF desires to provide a line of credit (the "Line of Credit") to the Firm secured by the Firm's accounts receivable; and

**WHEREAS**, the Firm desires to make draws under the Line of Credit based on the value of each Contract approved by FSF for a financing draw (each, an "Approved Account").

**NOW, THEREFORE**, in consideration of the foregoing preamble and recitals, which are incorporated in full in this Agreement, and the following covenants, promises, representations, and warranties, the receipt and sufficiency of which the parties acknowledge and agree, the parties agree as follows:

<u>Agreement</u>

1.      Financing.  FSF shall extend the Line of Credit to the Firm in the initial amount of $50,000.00, which amount may be increased by FSF at its sole discretion. The Line of Credit will be further evidenced by a Promissory Note (the "Note").  FSF shall make advances under this Line of Credit to Firm as provided below. FSF shall manage and collect payments directly from the Clients associated with Approved Accounts as the Firm's agent, and apply such payments to the Line of Credit, as provided in more detail below.

2.      Line of Credit Advance.  FSF shall make advances under the Line of Credit in amounts equal to seventy-five percent (75%) of the post-petition fee associated with each Approved Account (the "Funding Advance"). The Firm will upload each Contract tendered to FSF as a potential Approved Account through the FSF online portal, and once FSF approves the Contract it will be deemed an Approved Account. No Contract shall qualify as an Approved Account unless the Contract meets the FSF underwriting requirements, which requirements are subject to modification by FSF in its sole discretion. The Funding Advance will be disbursed as follows:

2.1.     Initial Amount.  Sixty percent (60%) of the total post-petition fee associated with an Approved Account shall be disbursed by FSF to the Firm, typically within three (3) business days of FSF determining that a Contract is an Approved Account.

2.2.     Holdback Amount.  The remaining fifteen percent (15%) of the total post-petition fee associated with an Approved Account (the "Holdback Amount") will be credited to a holdback account (the "Holdback Account") as security for the performance of all Approved Accounts funded by FSF hereunder, subject to the following provisions:

(a) FSF may offset any delinquent payments and defaulted obligations associated with any Approved Account, including fees and collection costs, against the balance in the Holdback Account. Any such amount offset against the Holdback Account shall become non-refundable to the Firm unless the associated Client later pays such amounts to FSF. FSF reserves the right to require the Firm to replenish the Holdback Account if the Holdback Account has an insufficient, vested balance to allow such offsets.

(b) Any Holdback Account balance not otherwise applied as outlined above and in excess of the Minimum Holdback Account Balance (as defined below) shall be

remitted to the Firm on a monthly basis (a "Supplemental Advance"). FSF shall perform a monthly analysis of the Holdback Account as of the final day of each calendar month and shall make a Supplemental Advance to the Firm in an amount equal to the portion of any Holdback Account balance in excess of the Minimum Holdback Account Balance.  Such Supplemental Advance will be funded to the Firm via ACH on or about the 15th day (or the next business day) of the following calendar month.

Notwithstanding anything herein to the contrary, upon the expiration or earlier termination of the Term of this Agreement, the balance of the Holdback Account, if any, shall be remitted to the Firm within thirty (30) days after all outstanding balances of Approved Accounts have been fully collected or offset against the Holdback Account.

(c) The "Minimum Holdback Account Balance" shall be the greater of I) $3,000, or ii) 50% of the highest, monthly total of Approved Accounts in the trailing, six-calendar-month period. The Minimum Holdback Account Balance shall also be subject to adjustment by FSF based on historical delinquencies and other risk factors as determined in FSF's sole but reasonable discretion. For purposes of determining whether a Supplemental Advance is due to the Firm, the Holdback Amount associated with an Approved Account shall not be included in determining the Holdback Account balance until the 90th day after the date that a Contract is deemed an Approved Account by FSF.

2.3.     Onboarding Fee. The Firm shall pay to FSF a one-time set-up fee of $249.00 for onboarding the Firm into the FSF system.  If the Firm uploads its first Contract within 30-days from the Effective Date, FSF will refund the $249.00 set-up fee to the Firm.

2.4.     Grant of Security Interest. The Firm shall grant to FSF a first and continuing lien and security interest in and to the Collateral (defined below) to secure the Firm's Obligations (defined below).

2.5.     Calculation of Disbursements and Fees. The parties acknowledge and agree that their finance relationship under this Agreement does not constitute fee sharing for multiple reasons, including the fact that (i) the Firm's payment obligations under this loan are fully recourse, and (ii) although initial advances under the Line of Credit are calculated based on the amount payable under each individual Approved Account the fees received by FSF for the services it provides pursuant to this Agreement are not based upon the actual amounts paid by Clients or the performance of any individual Approved Account. Furthermore, the Holdback Account cross-defaults and cross-collateralizes all Approved Accounts and therefore performing Approved Accounts will contribute more than non-performing Approved Accounts to the fees paid to FSF.

2.6.     Services Provided by FSF. The parties acknowledge and agree that FSF's fee under this Agreement is for all of the services provided pursuant to the FSF Program, and not solely for the financing associated with the Line of Credit.

3.      Term.  The initial term ("Initial Term") of this Agreement will begin on the Effective Date and continue for a period of one year, unless earlier terminated in accordance with this Agreement.  If this Agreement is not terminated during the Initial Term, this Agreement shall automatically renew for successive one-year periods (each a "Renewal Term," and together with the Initial Term, the "Term").

4.      Termination.  Lender's obligation to advance funds under the Line of Credit may be terminated as follows: (a) as required by law; (b) by written agreement of the parties; (c) upon the expiration of the then-existing Term pursuant to written notice delivered by either party to the other party at least 30 days prior to the expiration of the then-existing Term; (d) ten (10) days after a non-breaching party has delivered written notice of a breach of this Agreement to the breaching party and such breach remains uncured; (e) immediately by FSF due to suspension, revocation or non-renewal of the Firm's license, certification, accreditation or any other government authorization required for the Firm to provide its legal Services in compliance with all applicable laws and regulations; (f) immediately by FSF upon the breach of any representation or warranty by the Firm; or (g) upon FSF determining that it's risk of further financing to the Firm is commercially unreasonable, in FSF's sole but reasonable discretion.

5.      Responsibilities of the Firm.

5.1.     Standards.  The Firm shall provide all of its Services to the Client (1) within a reasonable period following the effective date of the Contract, (2) in an ethical and competent manner, and (3) in accordance with all applicable laws and regulations and generally accepted standards of legal practice and management in the relevant

community. The Firm agrees to use commercially reasonable efforts to maintain and demonstrate its reasonable within request by FSF throughout the Term of this Agreement, maintenance of, and compliance related to the following:

(a) Applicable licensures governing the Firm's business, in good standing, under applicable state and federal law, which license has not been suspended, revoked or restricted in any manner; and

(b) Admission to all appropriate bars, courts and forums.

5.2.   Engagement Agreement. The Firm does hereby represent, warrant and covenant that: (a) the Contract for each Approved Account discloses to the Client the existence or potential existence of this Agreement; (b) Client has been provided an opportunity to ask the Firm questions regarding the collateral assignment or potential collateral assignment of the account; (c) Client has acknowledged that the Firm has answered all such questions to Client's satisfaction; (d) Client has explicitly consented in writing to the Firm's collateral assignment of the accounts receivable associated with the Approved Account; (e) Client has explicitly consented in writing to the Firm's disclosure of certain Client information necessary for the underwriting, collection of the accounts receivable and credit reporting, such as the Client's name, social security number, address, email and phone number together with a copy of the Contract, bank statements, pay stubs and payment authorization agreement (collectively, the "Client Information"), and in no event will such Client Information include time entries, privileged communications between the Firm and Client, or any documents of the Client file other than the Contract, bank statements, pay stubs and payment authorization agreement ; (f) Client has explicitly consented to being contacted by FSF by telephone, email, mail and text messaging; (g) the Contract for each Approved Account contains disclosure language substantially similar to what is provided by FSF to Firm as part of FSF's recommended best practices; (h) the bifurcation of each case and collateral assignment of each Approved Account has been disclosed to the Court in the Rule 2016 Fee Disclosure in a manner substantially similar to what is provided by FSF to Firm as part of FSF's recommended best practices; (i) if the filing fee in a case is not paid and FSF makes an advance to Firm under the Line of Credit, then Firm will promptly pay the filing fee for such case; and (j) with regard to any Client consents or waivers of conflicts, the Clients have been fully informed and given an opportunity to seek legal advice regarding such consents and waivers. Failure to comply with the foregoing representations and warranties or a breach of the foregoing covenants constitutes a material default under this Agreement and will likely violate applicable law and attorney ethical rules. The Firm acknowledges and agrees that FSF shall rely on the accuracy of the representations and warranties contained herein.

5.3.   Payment Authorization and Cooperation. The Firm agrees to cause any Client associated with an Approved Account to enter into and execute a mutually agreeable payment authorization form. Furthermore, the Firm agrees that in the event that a payment on an Approved Account is directed to the Firm, the Firm will immediately notify FSF and will make arrangements to immediately forward collected amounts to FSF, which obligation shall survive termination or expiration of this Agreement for any reason. Firm authorizes FSF to collect such sums from the Firm's bank account by ACH transfer.

5.4.   Management and Collection of Approved Accounts. For so long as any Obligations are outstanding, FSF shall manage and collect the payments under the Approved Accounts. The Firm shall cooperate with the management and collection by FSF of the Approved Accounts and authorizes FSF to modify payment terms, defer payments and take other steps as reasonably necessary to resolve delinquencies and defaults by Clients under the Approved Accounts. Notwithstanding anything herein to the contrary, in the event of any missed payment, uncollectable receivable or defaulted Contract, FSF shall first offset the past due amounts against the Holdback Account, or if more than ninety (90) days of payments remain unpaid, offset the entire amount payable under the Approved Account against the Holdback Account. Unless the Firm requests that FSF cease efforts to obtain payment for the defaulted Approved Account, FSF will continue reasonable efforts to collect the amounts owed under said defaulted Approved Account until FSF determines in its sole discretion that such reasonable efforts are ineffective. If the Holdback Account has an insufficient balance to offset the missed payments or defaulted contract, then FSF reserves the right to provide the Firm with 10-days' notice that the Firm must pay FSF the Account Refund Amount defined below. In the event FSF makes such payment demand on the Firm and the Firm fails to make such payment to FSF, then the Firm will be in default under this Agreement and FSF may pursue any all rights to collect the accounts receivable due under the Contract. In no event will FSF file a collection lawsuit against a Client unless (i) the Law Firm is in default under this Agreement or the Note,

(ii) there are not sufficient funds in the Holdback Account to offset the amount owed by such Client, and (iii) the Firm has withdrawn as counsel for such Client or completed the Firm's work for such Client. Notwithstanding anything to the contrary in this Agreement the Firm will retain sufficient control over the collection process to satisfy its ethical responsibilities.

5.5.   Representations and Warranties. The Firm represents and warrants to FSF that: (a) the Collateral described below is owned by the Firm free and clear of all liens, encumbrances, levies, mortgages, pledges, or other claims (collectively, "Liens") other than the first lien and security interest of FSF; (b) to the best of its knowledge after due inquiry, the Firm has no notice of any claims, whether actual or threatened, in connection with the Approved Accounts; (c) the Firm has not taken or received any payment, other than the Funding Advance, relating to the Approved Accounts; and (d) the Firm shall fully complete the Services contracted for in connection with the Approved Account in accordance with the terms herein. These representations and warranties are continuing in nature and will be deemed reaffirmed with each advance of funds under the Line of Credit.

5.6.   Account Refund. In the event of a breach by the Firm of any covenant, representation or warranty with respect to one or more Approved Accounts, then upon demand by FSF the Firm shall pay to FSF an amount equal to the uncollected balance of such Approved Account(s) (the "Account Refund Amount") within 10-days of FSF's notice of such breach and demand for payment.

5.7.   Indemnity. The Firm shall defend, indemnify, and hold harmless FSF from and against any and all claims, causes of action, damages, fines, judgments, penalties, costs, liabilities, losses or expenses (including attorney's fees), arising out of the Firm's breach of any representation or warranty in this Agreement.

5.8.   Dismissed Cases. The Firm will immediately notify FSF of any dismissed case relating to an Approved Account that is not reinstated within 10 days from the dismissal order being issued. In such event the Firm will pay FSF the Account Refund Amount associated with such dismissed case within 10 days from demand by FSF for such payment.

5.9.   Fee and Other Client Disputes. The Firm will remain responsible for handling any fee or other disputes with Clients, and such disputes will remain between the Firm and Client. In the event the Firm reduces the amount owed by a Client under an Approved Account, FSF will offset such waived amount against the Holdback Account and will not seek to collect such fees from the Client, but in such event, FSF's fee relating to such Approved Account shall not be reduced. If the Holdback Account does not have sufficient fees to cover the waived amount, then FSF reserves the right to make demand on the Firm to make payment to FSF in an amount sufficient to increase the balance of the Holdback Account to an amount sufficient to cover the waived amount in accordance with Section 2.2 above.

6.   Responsibilities of FSF.

6.1.   Client Information. FSF will hold all Client Information confidential and shall not share it with any third party, except a) as reasonably necessary to effect collection of the account receivable associated with such Client; b) as required by law or lawful order; and c) to report payment history in connection with FSF's credit reporting program. If FSF inadvertently receives documents of a Client not required under this Agreement or not consented to by a Client, FSF will promptly return such documents to the Firm or otherwise destroy such documents.

6.2.   No Interference. FSF shall not interfere with or influence the Firm regarding any decisions, legal advice or legal work the Firm makes or provides on behalf of the Client and its Services.

6.3.   Client Credit Reporting.

FSF shall not report any payment information regarding a Client to any credit bureau unless the Client has consented to such reporting in the payment authorization agreement. In the event that the Client elects to have FSF report a Client's payment history to any credit bureau and Client provides FSF with all necessary information for such reporting, including, but not limited to, Client's social security number, FSF shall report the same pursuant to credit reporting laws and regulations as well as FSF's internal reporting guidelines and schedules.

6.4.   Defense Guarantee. In the event the Firm is challenged by the US Trustee or a Bankruptcy Judge with regard to the legality or ethical propriety of chapter 7 bifurcation, FSF will defend the Firm in accordance with FSF's Defense Guarantee Policy described on the FSF website (the "Defense Policy"). The Firm understands that in order to qualify for the Defense Policy, the Firm must satisfy the "Attorney Responsibilities" outlined in the Defense Policy, which responsibilities include without limitation bifurcating the case correctly, making proper disclosures to the court, obtaining informed consent from the debtor, and charging a reasonable fee for the

post-petition legal services. If a final non-appealable order is issued holding that bifurcation of Chapter 7 cases is not allowed under the Bankruptcy Code, FSF will indemnify the Firm, in accordance with the Defense Policy against disgorgement of fees in an amount not to exceed $50,000.00.

7.    Customer Matters.

7.1.    Under no circumstances is the Firm's attorney-client relationship with Client being transferred to FSF. The parties each acknowledge that FSF is not a law firm. Accordingly, there is no attorney-client relationship between the Firm's Client and FSF, or between FSF and the Firm. The Firm will not provide any attorney-client privileged information to FSF.

7.2.    The Firm is responsible for all attorney-client and ethical responsibilities relating to its Services with Clients, and FSF will not take any actions with respect to the Clients or Approved Accounts that the Firm cannot do directly. The Firm shall make all disclosures to Client and the bankruptcy courts as required by applicable rules of professional conduct, court rules and controlling law. In addition, FSF will not direct or control the Firm's representation of any Client and will not control any fee dispute between the Firm and a Client, including any refunds owed a Client in the event a Client terminates representation prior to the Firm's completion of the post-petition work.

7.3.    Although FSF strives to stay informed regarding applicable state and Federal case law, statutes and rules (including without limitation attorney ethics rules), FSF is not a law firm and the Firm cannot rely on any information provided by FSF to the Firm or its attorneys and staff and the Firm agrees to conduct its own legal research and analysis regarding bifurcation, collateral assignment of accounts receivables, outsourcing management of accounts receivable, financing as described in this Agreement, and required disclosures in the jurisdiction(s) in which the Firm practices law.

8.    Miscellaneous Provisions.

8.1.    Notice. Any notice required or permitted to be given hereunder shall be in writing delivered in person by hand delivery, proof of delivery requested; mailed by first class United States mail, certified or registered mail, return receipt requested, postage pre-paid; or sent by overnight courier, proof of delivery requested, charges prepaid, to FSF and the Firm at the addresses listed below, or at such other addresses as FSF and the Firm may hereafter designate. All notices shall be deemed given on the date of delivery if delivered in person or two business days after such noticed is deposited in the United States mail, or the next day after the date deposited in an overnight courier.

| If to FSF:<br>Fresh Start Funding<br>1805 N Scottsdale Rd, Ste 100<br>Tempe, Arizona 85281<br>Attn: Legal Department | If to Firm:<br>Ridings Law Firm LLC<br>2510 S  Brentwood Blvd<br>St Louis    MO    63144<br>Attn: William Ridings |
|---|---|

8.2.    Severability. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, such holding will not invalidate or render unenforceable any other provision hereof, and the parties shall agree upon a replacement provision for such invalid or unenforceable provision.

8.3.    Assignment. The Firm may not assign its rights or duties herein without FSF's prior written consent, and any assignment by Firm not permitted hereunder will be null and void.

8.4.    Governing Law, Venue, Attorney's Fees. This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Arizona. The exclusive venue for any judicial action arising out of this Agreement shall be the federal and state courts of competent jurisdiction located in Phoenix, Arizona, and the parties waive any objection that such forum is inconvenient. Subject to the restrictions of Section 8.13 below, the prevailing party in any such action shall be entitled to collect from the non-prevailing party its reasonable costs, fees, and expenses, including, attorneys' fees, travel and lodging costs, costs of depositions, expert witness fees, and court costs. These remedies are without limitation to other rights and remedies available to a party under this Agreement, at law, or in equity.

8.5.    Grant of Security Interest. As security for the payment and performance of all the Firm's obligations under this Agreement and the Note (the "Obligations"), regardless of the manner in which or the time at which such obligations arose or shall arise, whether direct or indirect, alone or with others, or absolute or contingent, Firm hereby grants to FSF a first and continuing lien and security interest in its accounts

receivable of the Firm and all proceeds thereof, as well as in any balance of the Holdback Account (the "Collateral"), whether or not delivered to or in the possession or control of FSF or its agents, and whether now or hereafter owned or in existence. The term "proceeds" includes whatever is receivable or received when Collateral or proceeds are sold, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, all rights to payment. The lien and security interest granted herein is irrevocable and shall remain in full force and effect until (a) all of the Firm's Obligations have been paid in full and (b) the Note has been terminated by mutual written agreement of FSF and the Firm. The Firm acknowledges and agrees that the Note is a revolving promissory note which provides for borrowings and repayment throughout the term of the Note.

8.6.    Remedies. Whenever a default has occurred and is continuing under this Agreement or the Note, FSF may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code and any other applicable law in addition to, and not in lieu of, any rights and remedies expressly granted in this Agreement and the Note and all of FSF's rights and remedies shall be cumulative and non-exclusive to the extent permitted by law. In particular, but not by way of limitation of the foregoing, FSF, at its option, may, without notice, demand or legal process of any kind:  (a) without notice accelerate the maturity of any part or all of the Obligations and terminate any agreement for the granting of further credit to the Firm; (b) sell Collateral at public or private sale; (c) transfer any Collateral into its own name or that of its nominee; (d) retain Collateral in satisfaction of Obligations, with notice of such retention sent to the Firm as required by law; (e) notify any parties obligated on any Collateral consisting of accounts, instruments, chattel paper, choses in action or the like to make payment to FSF and enforce collection of any Collateral; (f) file any action or proceeding which FSF may deem necessary or appropriate to protect and preserve the right, title and interest of FSF in the Collateral; (g) require the Firm to assemble and deliver any Collateral to FSF at a reasonably convenient place designated by FSF; and (h) apply all sums received or collected from or on account of Collateral, including the proceeds of any sale thereof, to the payment of the costs and expenses incurred in preserving and enforcing rights of FSF, including, without limitation, reasonable attorneys' fees, and Obligations secured hereby in such order and manner as FSF in its sole discretion determines.

8.7.    No Waiver of Breach. Any waiver by a party hereto concerning a breach of any provision of this Agreement will not operate or be construed as a waiver of such provision at any other time or of any other provision hereof at any time. A waiver of any provision in this Agreement must be in writing and signed by the party providing the waiver.

8.8.    Counterparts. This Agreement may be executed in one or more counterparts, may be executed by electronic signature, and may be exchanged by facsimile or electronic transmission, each of which will be deemed an original for all purposes, but all of which taken together will constitute one and the same document.

8.9.    Further Assurances. The parties agree to do all acts and to make, execute and deliver such written instruments as will from time to time be reasonably required to carry out the terms and provisions of this Agreement.

8.10.    Entire Agreement. This Agreement, together with the application made by or on behalf of the Firm as well as the attachments attached hereto as of the Effective Date or attachments made thereafter pursuant to the terms of this Agreement (which attachments are included in full in this Agreement by this reference), contain the entire agreement between the parties and shall supersede and replace any prior agreements or understandings of the parties, whether oral or written, concerning the subject matter hereof. If FSF and the Firm previously entered into a financing arrangement that provided for an assignment of any account receivables by the Firm to FSF, such account receivables are hereby assigned back to the Firm and Firm grants to FSF a first and continuing lien and security interest in and to such account receivable(s) in accordance with Section 8.5 above. Any terms not contained in this Agreement are not a part of this Agreement. Any change, addition, or amendment may only be made by written agreement executed by both parties. Any policy or statement of FSF referred to herein shall be construed to mean the most recent version then in effect at the time that the information or obligations contained in such statement or policy are implicated under this Agreement.

8.11.    Confidentiality. The parties to this Agreement shall treat and maintain its terms and contents as strictly confidential and will also treat as confidential any information concerning the contents of this Agreement. Such information may only be disclosed where such disclosure is expressly and specifically required, such as by a party's employees who are on a "need-to-know" basis to perform a party's obligations hereunder, by law or court order, or to persons who owe a duty of

confidentiality to the disclosing party, such as an accountant, banker, or attorney. Without limiting the foregoing, in no event may the Firm disclose this Agreement, any terms of the relationship between the Firm and FSF or any forms provided by FSF to the Firm, to any proposed or actual bankruptcy finance or factoring company.

8.12.    No Third-Party Beneficiaries.  This Agreement shall not create any rights in any third parties who have not entered into this Agreement, nor shall this Agreement entitle any such third party to enforce any rights or obligations that may be possessed by such third party.

8.13.    Disclaimers.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, AND EXCEPT FOR A PARTY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, INDEMNITY OBLIGATIONS (INCLUDING ATTORNEY'S FEES OBLIGATIONS), AND ATTORNEY'S FEES TO ENFORCE THIS AGREEMENT: (A) IN NO EVENT WILL EITHER BE LIABLE FOR ANY SPECIAL, INCIDENTAL, PUNITIVE, INDIRECT, EXEMPLARY OR CONSEQUENTIAL DAMAGES WHATSOEVER (INCLUDING DAMAGES FOR LOSS OF PROFITS, WHETHER ARISING IN TORT, CONTRACT, OR ANY OTHER LEGAL THEORY, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; AND, (B) A PARTY'S MAXIMUM CUMULATIVE LIABILITY FOR ANY CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL NOT EXCEED THE GREATER OF THE AMOUNT ACTUALLY PAID OR PAYABLE TO FIRM UNDER APPROVED ACCOUNTS.

8.14.    Survival.  The obligations of the Firm and FSF shall survive termination or expiration of this Agreement, except that FSF's agreement to make advances under the line of credit shall terminate upon termination or expiration of this Agreement.

By adding your signature, you represent that you are authorized to enter into this contract on behalf of both    Ridings Law Firm LLC

and yourself, and that both parties are bound hereto.

IN WITNESS WHEREOF the undersigned has executed this Agreement effective as of
November 7, 2019

Fresh Start Funding LLC                          Firm

DocuSigned by:                                   DocuSigned by:

*Matthew R. Hartley*                            *William Ridings*

C759BB9F3E554B3...                              62ABD05FD33E443...

Matthew R. Hartley                              William Ridings


**LINE OF CREDIT NOTE**

Made effective as of    November 7, 2019

For value received, both:

Ridings Law Firm LLC

and

William Ridings

(collectively, the "Borrower") promise to pay to Fresh Start Funding LLC, an Arizona limited liability company ("Lender"), or order, at 1805 North Scottsdale Road, Suite 100, Tempe, Arizona 85281, or at such other place as Lender may from time to time designate in writing, in lawful money of the United States, the principal sum not to exceed Fifty Thousand Dollars ($50,000.00), or so much as may from time to time be advanced by Lender to Borrower.

1.    Defined Terms.  Defined terms used but not defined in this Line of Credit Note ("Note") shall have the meaning set forth in that certain Line of Credit and Accounts Receivable Management Agreement (the "Loan Agreement") made between Borrower and Lender in connection with this Note.

2.    Advances.  Advances under this Note shall be made as provided in the Loan Agreement.

3.    Payment.  Payments will be made under this Note as provided in the Loan Agreement.

4.    Application of Payments.  Each payment made on this Note shall be credited first to any fees or costs due, then the balance, if any, to the outstanding principal balance thereof, or in such other order as Lender shall decide in its sole discretion.

5.    Security.  The repayment of and balance owed under this Note and the performance of any of the Obligations hereunder, is collaterally secured by a first and continuing lien and security interest in and to the Collateral described in the Loan Agreement.

6.    Modification of Line of Credit Amount.  Lender, in its sole discretion, may increase or decrease the amount of this line of credit based on payment histories of Approved Accounts, compliance of Borrower with the recommended best practices of Lender, and other matters deemed relevant by Lender.

7.    Maturity.  This Note shall mature as provided in the Loan Agreement.

8.    Representations and Warranties.  Representations and Warranties of Borrower.

a.    No Breach.  The execution and delivery of this Note will not conflict with or constitute a material default under any material contracts or agreements to which the Borrower is a party or by which it is bound.

b.    Binding Obligation.  This Note has been duly authorized by the Borrower and is a valid and binding obligation of the Borrower, enforceable against the Borrower, in accordance with its terms.

9.    Events of Default/Remedies.

a.    Events of Default.  Any one or more of the following events shall be an "Event of Default" hereunder:  (i) a default or breach by Borrower under the Loan Agreement or this Note; (ii) Borrower shall become insolvent, or shall become unable to pay its debts as they mature; or shall admit in writing its inability to pay its debts as they mature; or shall make an assignment for the benefit of its creditors; or shall file or commence or have filed or commenced against it any proceeding for any relief under any bankruptcy or insolvency law or any law or laws relating to the relief of debtors, readjustment of indebtedness, reorganizations, compositions or extensions, or a receiver or trustee shall be appointed for the undersigned; or (iii) any representation or warranty made to the Lender by the Borrower herein is incorrect in any material respect on the date such representation or warranty was made or the date any Approved Account is approved by Lender.

b.    Remedies.  Upon the occurrence of any Event of Default, Lender, at Lender's option, in addition to all other rights and remedies set forth in the Loan Agreement and available at law or in equity, all of which are cumulative, may declare all sums of principal, fees and costs outstanding hereunder to be immediately due and payable without presentment, demand, protest or notice of dishonor, all of which are expressly waived by Borrower, and Lender shall have no obligation to make any further extensions of credit, including without limitation any Funding Advance, to Borrower.  Borrower shall pay to Lender immediately upon demand the full amount of all costs and expenses, including reasonable attorneys' fees incurred by Lender in connection with the enforcement of Lender's right and/or the collection of any amounts which become due to Lender under this Note, whether or not legal proceedings are commenced.

10.    Miscellaneous.

a.    Notices.  All notices, requests, demands and consents to be made hereunder to the parties hereto shall be made in accordance with the Loan Agreement.

b.    No Waiver.  The acceptance by Lender of any payment under this Note after the date that such payment is due shall not constitute a waiver of the right to require prompt payment when due of future or succeeding payments or to declare a default as herein provided for any failure to so pay.  The acceptance by Lender of the payment of a portion of any payment at any time that such payment is due and payable in its entirety shall neither cure nor excuse the default caused by the failure to pay the whole of such installment and shall not constitute a waiver of Lender's right to require full payment when due of future or succeeding payments.

c.    Cost of Enforcement.  If it becomes necessary for Lender to retain legal counsel for the enforcement of this Note or the Loan Agreement, Lender shall be reimbursed immediately by Borrower for reasonably incurred attorneys' fees and other costs and expenses, whether or not an action shall be instituted to enforce this Note.  Borrower shall also reimburse Lender for all attorneys' fees and costs reasonably incurred in the representation of Lender in any bankruptcy, insolvency, reorganization or other debtor-relief proceeding of or relating to Borrower.  The obligations of Borrower under this paragraph shall be severable from the remainder of this Note and shall survive the entry of any judgment or other award entered in any proceedings relating to this Note.

d.    Waiver by Borrower.  Borrower hereby waives diligence, demand, presentment, notice of non-payment, protest and notice of protest and expressly agrees that this Note or any payment hereunder may be extended from time to time, and consent to the acceptance of security for this Note, all without in any way affecting their liability, and waive the right to plead any and all statutes of limitations as a defense to any demand on this Note, or to any agreement to pay the same to the full extent permissible by law.

e.    Governing Law and Venue.  This Note shall be governed by and construed under the laws of the State of Arizona.  Each party agrees that any litigation, claim or lawsuit directly or indirectly arising out of or related to this Note shall be instituted exclusively in the courts, whether Federal or State, located in the County of Maricopa, State of Arizona and nowhere else.

f.    Severability.  Every provision hereof is intended to be severable.  If any provision of this Note is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the other provisions hereof, which shall remain binding and enforceable.

g.    Maximum Interest.  No interest shall accrue or be due and payable under this Note or the Loan Agreement.  The parties hereto agree that the difference between

the amounts advanced by Lender to Borrower under the Approved Accounts and i) the amounts collected by Lender under the Approved Accounts, offset by FSF against Borrower's Holdback Account, and/or iii) required to be reimbursed by Borrower to FSF as an Account Refund Amount, do not constitute interest and are instead a fee for the services provided by Lender to Borrower under the FSF Program.  All agreements between Borrower and Lender, now existing or hereafter arising, are hereby expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid, to Lender hereof for the use, forbearance or detention of money exceed the maximum amount permissible under applicable law.  If from any circumstance whatsoever any such amount exceeds the limit of validity prescribed by law, then, ipso facto, the amount required to be paid shall be reduced to the limit of such validity, and if from any such circumstance Lender shall ever receive interest (under this Note or otherwise) an amount that would exceed the highest lawful rate, such amount as would otherwise be excessive interest shall be applied to the reduction of the principal amount owing hereunder and not to the payment of interest, or, to the extent it exceeds the unpaid balance of principal, shall be refunded to Borrower.

h.      Successors Bound; Assignment.  The terms of this Note shall apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns.  As used herein the term "Borrower" shall include the undersigned and any other person or entity who may subsequently become liable for the payment hereof; provided, however, that the obligations of Borrower hereunder shall not be assignable.  The term "Lender" shall include Lender as well as any other person or entity to whom this Note or any interest in this Note is conveyed, transferred or assigned (including, without limitation, any pledgee hereof).

i.      Amendment.  This Note shall not be changed or modified orally, but in each instance only by an instrument in writing signed by the party against which enforcement of such change, modification, or waiver is sought.

By adding your signature, you represent that you are authorized to enter into this contract on behalf of both:     Ridings Law Firm LLC

and yourself, and that both parties are bound hereto.

IN WITNESS WHEREOF the undersigned has executed this Agreement effective as of the date first set forth above.

BORROWER:

_____
William Ridings