UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| HAROLD GUIDO, | ) | Case No. 20-45516-169 |
| | ) | |
| Debtor. | ) | Hon. Bonnie L. Clair |
| | ) | U.S. Bankruptcy Judge |
| _____ | ) | |
| | ) | Hearing Date:  June 29, 2021 |
| DANIEL J. CASAMATTA, | ) | Hearing Time:  10 a.m. |
| Acting United States Trustee, | ) | Location: 111 South 10th Street |
| | ) | Courtroom 7 South |
| Movant | ) | St. Louis, Missouri 63102 |
| | ) | |
| | ) | Objection Deadline: June 22, 2021 |
| v. | ) | |
| | ) | |
| WILLIAM H. RIDINGS, JR., | ) | |
| | ) | |
| Respondent | ) | |

**UNITED STATES TRUSTEE'S MOTION FOR EXAMINATION OF
DEBTOR'S ATTORNEY'S FEES AND FEE AGREEMENTS WITH DEBTOR
PURSUANT TO LOCAL RULE 2093, 11 U.S.C. § 329(b), AND
<u>FEDERAL RULE OF BANKRUPTCY PROCEDURE 2017</u>**

Daniel J. Casamatta, Acting United States Trustee for the Eastern District of Missouri, Eastern Division, by his attorney, Joseph Schlotzhauer, hereby moves the Court pursuant to Local Rule 2093, 11 U.S.C. § 329(b), and Federal Rule of Bankruptcy Procedure 2017 to examine Mr. Ridings' attorney fees and to order Mr. Ridings to turn over to the Debtor any and all excess fees he received from the Debtor. In support of this motion, the United States Trustee states the following:

<u>Facts</u>

1.     On November 30, 2020, attorney William H. Ridings, Jr. ("Mr. Ridings") filed a voluntary petition on behalf of the debtor in this case, Harold Guido ("the Debtor"), under

1

chapter 7 of the Bankruptcy Code [Docket No. 1]. *See* Exhibit 1. Along with the petition, Mr. Ridings filed a creditor matrix and verification of the creditor matrix, but no other documents. *See id.*

2. On December 7, 2020, Mr. Ridings filed the Debtor's schedules, statement of financial affairs, statement of intention, Official Form B22A, and a Disclosure of Compensation of Attorney for Debtor(s) ("the Rule 2016(b) Declaration"). The Schedules and Statements are attached as Exhibit 2. [Docket No. 9]. A copy of the Rule 2016(b) Declaration is attached to this motion as Exhibit 3.

3. According to Schedule I, line 1, Debtor is employed as a "lead" with the National Cart Company. Exhibit 2. His spouse is unemployed. *Id.*

4. Debtor's net monthly income is $3,298, per Schedule I, line 12. *Id.*

5. Schedule J, line 17c lists a $142 payment to "Fresh Start." *Id.*

6. After expenses, the Debtor's monthly net income on Schedule J, line 23c is negative $34. *Id.*

7. The Debtor owns no real property and $2,425 in personal property per Schedule A/B, lines 55 and 62. *Id.*

8. According to the Rule 2016(b) Declaration, the Debtor agreed to pay $1,700 for legal services, and Mr. Ridings received $0 prior to filing. Exhibit 3, ¶ 1. In paragraph 3, Mr. Ridings indicated that the Debtor is the source of compensation to be paid to Mr. Ridings. *Id.* at ¶ 3. In paragraph 4, Mr. Ridings indicated that he has not agreed to share the above-disclosed compensation with any other person outside of members of his law firm. *Id.* at ¶ 4.

9. Paragraph 8 of the Rule 2016(b) Declaration provides that the Debtor was

given two options for payment: (1) pay a smaller fee in full before filing or (2) pay a larger fee in installments after filing. The Rule 2016(b) includes a number of justifications for charging a higher fee in the second option, among them:

   a. Counsel performs additional work to split the engagement;
   b. Counsel takes on risk by allowing the debtor to pay the attorney fee over time instead of collecting the entire fee up front;
   c. The option provides the debtor(s) with the benefit of a quicker filing than if the debtor(s) had to come up with the money to pay in advance;
   d. The option gives debtor(s) an opportunity to begin rebuilding their credit score by making timely payments toward the attorney fee;
   e. Counsel will not charge the debtor additional fees for certain services that if required would otherwise cost the debtor(s) more if debtor(s) had paid the entire fee before the case was filed; and
   f. FSF (described below) charges a fee to Counsel for its financing, payment management, credit reporting and other services provided to Counsel, for which FSF charges a fee equal to 25% of the attorney fee that the Law Firm charges debtor(s) for the post-petition services.

*Id*. at ¶ 8.

10. According to Paragraph 9 of the Rule 2016(b) Declaration, "Debtor and counsel entered two, separate agreements for pre- and post-petition work." *Id.* at ¶ 9. Paragraph 9 then sets forth the following descriptions of the two agreements:

"The first, pre-petition fee agreement was signed prior to the filing of the petition for the preparation and filing of the bankruptcy petition, statement about social security number, creditor list and other documents required at the time of filing; and review, analysis and advisement of the typical matters that are required to be performed prior to filing by a bankruptcy attorney under the applicable bankruptcy and ethical rules. Counsel's fees paid under the first fee agreement (if any) are shown in Section 1 above as "Prior to the filing of this statement I have received", and any fees earned but not paid for the pre-petition work were waived by counsel.

The second, post-petition fee agreement was signed after the petition was filed for post-petition work to be performed, including the preparation of schedules of assets and liabilities, and statement of financial affairs; preparation and filing of other required documents; representation at the first meeting of creditors; and other services outlined in the fee agreement.

3

> Counsel's fees owed by debtor under the second fee agreement for post-petition work are reflected in Section 1 above as the Balance Due. The second fee agreement allows the debtor(s) to pay these post-petition fees and costs in installments over 12 months following the bankruptcy filing."

*Id.* at ¶ 9.

11. Paragraph 10 of the Rule 2016(b) Declaration provides that Mr. Ridings "has a recourse line of credit from Fresh Start Funding LLC ("FSF") secured by a lien against the accounts receivable of counsel, including amounts owed by debtor(s) to counsel." *Id.* at ¶ 10.

12. Paragraph 10 further explains that FSF "provides payment management and processing services and will "collect installment payments" from the Debtor "on behalf of counsel." *Id*. FSF will apply amounts the Debtor pays "against counsel's indebtedness to FSF under the line of credit." FSF also "provides credit reporting services" to Debtor, "education and training to counsel and his/her staff, and a defense guaranty and indemnity to counsel." *Id.* For these services, "FSF charges a fee calculated at 25% of the receivable owed by the debtor(s) to counsel and counsel is required to pay this fee regardless of whether debtor(s) make their required payments." *Id*.

13. Paragraph 11 of the Rule 2016(b) Declaration states that Mr. Ridings "has fully informed [the Debtor] and obtained [his] informed consent to the bifurcation of services, lien of FSF against the receivable, FSF's payment management and credit reporting services, and to a limited sharing of information with FSF concerning [Debtor] to facilitate counsel's financing and FSF's payment management, processing, and credit reporting services concerning Debtor." *Id.* at ¶ 11.

14. Mr. Ridings and Debtor entered into two separate agreements regarding

4

compensation: a "Pre-Filing Agreement" and a "Post-Filing Agreement," respectively executed on November 28, 2020, and December 5, 2020, and attached as Exhibits 4 and 5, respectively.

15. In the Pre- and Post-Filing Agreements, Mr. Ridings separates services into three lists: Pre-Filing Services, Post-Filing Services, and Supplemental Post-Filing Services. *See* Exhibits 4 and 5 at page 1. The "Pre-Filing Services" include:

 a. meeting and consulting as needed prior to filing;
 b. analyzing the information from the intake questionnaire and other documents;
 c. providing "due diligence, legal analysis and legal advice in order to help [the Debtor] make important legal choices and to comply with the bankruptcy code and rules"; and
 d. preparing and filing the Debtor's Chapter 7 Voluntary Petition, Statement about Social Security Numbers, Pre-Filing Credit Counseling Certificate, and List of Creditors "to start your Chapter 7 case."

*See id.*

16. The "Post-Filing Services" include, among other items:

 a. preparing and filing the Debtor's Schedules and Statement of Financial Affairs;
 b. preparing and filing Means Test calculations and disclosures;
 c. preparing for and attending the Debtor's Section 341 meeting of creditors;
 d. administrating and monitoring the case and communicating with Debtor "throughout the process;"

5

    e. forwarding the "Trustee Questionnaire and debtor documents to the Trustee

    f. "noticing" the Debtor's employer to stop any garnishments;

    g. reviewing and responding to Trustee requests;

    h. "reviewing and advising" the Debtor regarding any motions for stay relief;

    i. "reviewing and advising" the Debtor regarding any reaffirmation agreements or redemptions; and

    j. "[a]ny legal service required by the local rules."

*See id*.

17. Finally, the agreements provide a list of "Supplemental Post-Filing Services" that would cost $350 per hour for attorney time and $150 per hour for paralegal time if the Debtor had chosen to pay before filing. *See* Exhibits 4 and 5.

18. The Pre-Filing Agreement provides that if Debtor had paid in full before filing, the total fee would have been $1,500: $1,325 legal fees, $335 filing fee, and a $40 credit report minus a $200 discount for payment at time of service. *See* Exhibit 4. However, if the Debtor chose to pay nothing upfront and to pay in installments after filing, the total fee would be $1,700: $1,125 legal fees, $335 filing fee, $40 credit report, and $200 financing fee. *See id*. Per the Pre-Filing Agreement, the Debtor appears to have selected 52 weekly installment payments of $32.70. *See id.* at 4.

19. The Pre-Filing Agreement provides that "[u]nder this Pre-Filing Agreement, we will **only provide the Pre-Filing Services listed above**." Exhibit 4 at 3 (emphasis in original).

20. Per the Pre-Filing Agreement, after the Debtor's case is filed, he would have three choices: represent himself, hire another attorney, or enter the Post-Filing

6

Agreement with Mr. Ridings within ten days after his case was filed. *Id.*

21.  The Pre-Filing Agreement states that if the Debtor chose to proceed pro se or to hire another attorney, the Debtor would not owe anything additional to Mr. Ridings, Mr. Ridings would ask the Court to allow him to withdraw as Mr. Ridings, and Mr. Ridings would "continue to represent [the Debtor] in the case and perform all necessary services until and unless the court allow[ed]" him to withdraw. *Id.*

22.  Mr. Ridings also produced to the United States Trustee a copy of his agreement with FSF as well as an addendum to that agreement (respectively, "the FSF Agreement" and "the FSF Addendum"), attached to this motion as Exhibits 6 and 7.

23.  The FSF Agreement is dated November 7, 2019 and the FSF Addendum, April 5, 2020. *See* Exhibits 6 and 7.

24.  Under the FSF Agreement, FSF agreed to provide a $50,000 line of credit and accounts receivable management services to Mr. Ridings. *See* Exhibit 6 at ¶¶ 1, 5.4. The FSF Agreement stipulates that whenever a client of Mr. Ridings elects to enter bifurcated fee agreements, Mr. Ridings submits the executed agreements to FSF for approval to be used in the line of credit. *Id.* at ¶ 2. If FSF approves, FSF makes advances to Mr. Ridings equal to 75 percent of the amount of the post-petition agreement, and FSF collects payments from the client. *Id.* at ¶¶ 2, 5.3, 5.4. FSF initially paid Mr. Ridings 60 percent, and held back 15 percent, of the amount of the post-petition agreement (*id.* at ¶¶ 2.1, 2.2), but under the terms of the FSF Addendum, these amounts were changed to 65 percent and ten percent, respectively. *See* Exhibit 7 at ¶¶ 1.1, 1.2.

25.  On January 26, 2021, the U.S. Trustee questioned the Debtor regarding Mr. Ridings' compensation at the Section 341 meeting of creditors (the "341 meeting").

7

26. The Debtor testified that he chose the bifurcated agreement option Mr. Ridings offered to him because the Debtor did not have the funds to pay attorney's fees in full before filing.

27. When asked what work was done on his case before filing, the Debtor testified that he was not clear on what was done.

28. When the Debtor was asked what he thought would happen if he chose not to retain Mr. Ridings after filing the petition, he replied that he had "no idea" what he would have done.

29. When asked if he would have had the funds to hire a different attorney if he chose not to retain Mr. Ridings after filing the petition, the Debtor replied that would not have and that he would have had to represent himself.

30. When asked how the Debtor would make payments to Fresh Start Funding given that he had negative disposable income, the Debtor replied that he would borrow money from family.

31. The Debtor further testified that he understood that he was essentially borrowing money from FSF to pay his attorney's fees and that his credit could be affected negatively if he failed to make payments to FSF.

**Argument**

32. This Court should cancel the agreements between the Debtor and Mr. Ridings because the agreements unbundle services in violation of Local Rule 2093(C)(3) and because $1,125 in attorney's fees purely for post-petition services and a $200 financing fee exceed the reasonable value of those services pursuant to 11 U.S.C. § 329(b) and Fed. R. Bankr. P. 2017.

**The fee agreements violate Local Rule 2093(C)(3) in that they impermissibly unbundle services.**

33. Local Rule 2093(C), "Obligations of Attorneys" provides in subpart (3):

"**[D]ebtor's counsel shall provide all legal services necessary for representation of the debtor in connection with the bankruptcy case until conclusion of the case**, except for, at the discretion of debtor's counsel, representation of the debtor in an adversary proceeding and/or an appeal, for the fee set forth in the attorney fee disclosure statement filed with the Court pursuant to L.R. 2016-1(A). **Unbundling of legal services or any similar arrangement is prohibited, and debtor's counsel shall not include any language in the attorney fee disclosure statement or in a client agreement that contradicts or is inconsistent with this Rule**."

(emphasis added).

34. The purpose of L.R. 2093(C)(3) is to prevent debtor's attorneys from negotiating away and/or carving out important legal services and to ensure that debtors are provided with all necessary legal services until the conclusion of the case. Many Chapter 7 debtors are not in a position to conduct arms-length negotiations with bankruptcy attorneys about which services are necessary and what each service, or bundle of services, should cost. "The attorney is the one who is knowledgeable about legal fees and the services likely to be required; the client typically is not." *In re Rodriguez Perez*, 2018 WL 3655656, at *10 (Bankr. D.P.R. 2018).

35. The fee agreements in this case work to undo L.R. 2093(C)(3)'s protections in that they unbundle services into pre- and post-petition services. *See* Exhibits 4 and 5, Paragraph 1, "The Work Involved to Complete your Chapter 7 Case." Accordingly, if the Debtor did not sign the Post-Filing Agreement, Mr. Ridings would have moved to withdraw and would only have continued to perform services "until or unless" the bankruptcy court allowed him to withdraw. *See* Exhibit 4, Pre-Filing Agreement, "Option #2 – File Now Pay Later."

9

36. In this case, the Debtor testified at the § 341 meeting that he chose the *File Now Pay Later* option because he lacked the funds to pay an attorney upfront. Further, the Debtor testified that he did not know what he would have done if he had not entered the Post-Filing Agreement with Mr. Ridings and that he would have lacked the funds to hire a different attorney. L.R. 2093(C)(3) exists to prevent situations like this, where if the Debtor chose not to sign a Post-Filing Agreement obligating him to installment payments, he would have been left unrepresented with pending deadlines, without necessary documents filed, and facing potential and significant legal and financial consequences.

37. Bifurcations into pre- and post-filing services have another problem: "by waiting until after the petition is filed to perform most of the actual services, such as filing out schedules and statements, counsel risks overlooking essential information regarding the debtors' financial condition, which may have been missed in the cursory interview conducted pre-petition. Counsel may discover too late that he or she should have chosen a different chapter, or not filed the case at all." *See In re Wright*, 591 B.R. 68, 94 (Bankr. N.D. Okla. 2018).

38. In this case, according to the Pre-Filing Agreement, Mr. Ridings did not begin work on the schedules and statements and the means test until after the petition was filed and after the Debtor entered into the Post-Filing Agreement. *See* Exhibit 3. Such an arrangement is exposed to the risks outlined in *Wright* above. *See Wright*, 591 B.R. at 94.

39. The fee agreements in this case, which expressly unbundle services into pre- and post-filing services and provide separate payment terms for each, violate Local Rule 2093(C)(3) and should be deemed void and cancelled. Any amounts paid under

them should be refunded to the Debtor. "It is within the bankruptcy court's discretion to enforce the Bankruptcy Rules and local bankruptcy rules." *See In re Gomez*, 2014 WL 1229612, at *3 (B.A.P. 9th Cir. Mar. 25, 2014), *vacated and remanded sub nom In Re Gomez*, 670 F. App'x 549 (9th Cir. 2016) (citing *Price v. Lehtinen (In re Lehtinen),* 332 B.R. 404, 412–14 (9th Cir.BAP2005), *aff'd,* 564 F.3d 1052 (9th Cir.2009); *see also Weil v. Neary,* 278 U.S. 160, 169 (1929) (local rules have the force of law) (internal citations omitted). Courts have the authority to disgorge attorney's fees for violations of local rules. *See In re Redding*, 265 B.R. 601, 603 (B.A.P. 8th Cir. 2001) (upholding disgorgement of fees for debtor's counsel's failure to comply with local rule regarding disclosure of compensation).

**The fees in this case exceed the reasonable value of services, and the excess fees should be returned to the debtor pursuant to 11 U.S.C. § 329(b).**

40. 11 U.S.C. § 329(b) allows a bankruptcy court to examine compensation arrangements between debtors and their attorneys. The Court can examine the fees paid to counsel and, to the extent the fees paid exceed the reasonable value of the services rendered, the Court can cancel the agreement or order the return of any excessive payment. *See* 11 U.S.C. § 329(b).

41. The Eighth Circuit has held that "[t]he bankruptcy court has the broad power and discretion to award or deny attorney fees, and indeed, a duty to examine them for reasonableness." *In re Clark*, 223 F.3d 859, 863 (8th Cir. 2000). To determine whether fees are excessive, the Court should compare the amount of compensation that the attorney received to the reasonable value of the services rendered. *In re Zepecki*, 258 B.R. 719, 725 (8th Cir. BAP 2001).

42. Section 329(b) places the burden on the attorney to establish the

11

reasonableness of the compensation. *In re Mahendra*, 131 F.3d 750, 757 (8th Cir. 1997).

43. Fed. R. Bankr. P. 2017 ("Rule 2017") provides that the Court, after notice and a hearing, may determine whether the Debtor's payment or transfer of property, made directly or indirectly and in contemplation of the filing of a petition under the Code, to an attorney for services rendered or to be rendered, is excessive.

44. "Rule 2017 implements § 329 by directing court review of all bankruptcy-related fees, whether generated pre- or post-petition, whether the payment or transfer is made directly or indirectly, to determine whether those fees are excessive." *In re Brown*, 371 B.R. 486, 497 (Bankr. N.D. Okla. 2007).

45. In a recent case involving similar bifurcated fee agreements, the Bankruptcy Court for the Northern District of Oklahoma held that the attorney's fees charged to chapter 7 debtors were unreasonable under 11 U.S.C. § 329(b). *In re Wright*, 591 B.R. 68, 94 (Bankr. N.D. Okla. 2018). In particular, the court was "troubled by [debtors' counsel's] practice of charging a higher fee to his clients that use the [bifurcated financing model] than to his conventional clients." *Id.* at 93. Debtors' counsel in *Wright* charged $1,250 to the average conventional client, but $1,500 for clients that could not pay up front, "a $250 premium, or 20% above the fee charged in a conventional case, for the convenience of paying the fee over 12 months." *Id.* Based in part on these issues, the court found the fee agreements void and unenforceable and ordered debtors' counsel to disgorge all fees collected by the financing company after debtors' petitions were filed. *See id.* at 99.

46. In another case involving similar bifurcated financing agreements, *In re Milner*, the court found the fees to be unreasonable because debtor's counsel charged

12

the debtor more "simply because the Debtor could not pay the fees up-front pre-petition." 612 B.R. 415, 440 (Bankr. W.D. Okla. 2019) (appeal pending, *Sisson v. United States Trustee*, Civ. No. 5:20-cv-00033-PRW (W.D. Okla.)).

47.     Many of the same facts and issues that led the courts in *Wright* and *Milner* to find attorney's fees unreasonable and cancel the fee agreements are present in this case. Like the debtors in *Wright* and *Milner,* the Debtor in this case has negative disposable income and was unable to pay attorney's fees in full pre-petition. The Debtor and Mr. Ridings entered into similar agreements that bifurcate services into pre- and post-petition services, wherein the Debtor paid nothing up front but, after filing, makes payments in installments, which are collected by a third-party financing company, FSF. The Debtor in this case paid a higher total fee, including a $200 financing fee, based on his inability to pay in full upfront. For these reasons, the fees are excessive and should be disgorged pursuant to § 329(b).

WHEREFORE, for the reasons set forth above, the United States Trustee respectfully requests that this Court:

  a. Find the Pre- and Post-Filing Agreements unbundle services in violation of Local Rule 2093(C)(3);

  b. Examine the compensation arrangements and fees the Debtor paid, either directly or indirectly, to Mr. Ridings, pursuant to 11 U.S.C. § 329(b);

  c. Find that the attorney's fees the Debtor paid exceed the reasonable value of services;

  d. Order the return of any excess payments to the Debtor pursuant to 11 U.S.C. § 329(b); and

  e. Grant such further relief as this Court deems just and equitable.

Dated: June 7, 2021

Respectfully submitted,

DANIAL J. CASAMATTA
Acting United States Trustee

PAUL A. RANDOLPH
Assistant United States Trustee

By: */s/ Joe Schlotzhauer*
Joe Schlotzhauer
Trial Attorney
Office of the United States Trustee
Bar No. 62138MO
111 South 10th Street – Suite 6.353
St. Louis, Missouri 63102
Telephone: 202 280 9375
joseph.schlotzhauer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2021, a true and correct copy of the above and foregoing motion was filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri and that a true and correct copy of the motion was served electronically via the CM\ECF system of the Clerk of the United States Bankruptcy Court, Eastern District of Missouri upon those parties entitled to receive electronic notice.

I hereby further certify that on June 7, 2021, a true and correct copy of the above and foregoing motion was filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri and that a true and correct copy of the motion was served upon the parties listed below by First-Class United States mail, postage prepaid, at the following addresses:

Fredrich J. Cruse
P.O. Box 914,718 Broadway
Hannibal, MO 63401
Phone: 573-221-1333
Email: trustee@cruselaw.com
CHAPTER 7 PANEL TRUSTEE

William H. Ridings, Jr.
Ridings Law Firm
2510 South Brentwood Boulevard
Suite 205
St. Louis, MO 63144
COUNSEL FOR DEBTOR

Harold L Guido
1470 Park Ashwood Circle
Saint Charles, MO 63304
DEBTOR

/s/ Joe Schlotzhauer
Trial Attorney
Office of the United States Trustee